## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **SHANTELLE FORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  13-1960 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## OPINION

Plaintiff Shantelle Ford filed suit under 42 U.S.C. § 1983 against the District of Columbia and D.C. Police Detectives John Paprcka and James Bovino.  Ms. Ford alleges that the Officers entered her apartment without a warrant in violation of the Fourth Amendment and that the District of Columbia caused the constitutional violation due to its failure to properly train, investigate, and discipline officers with respect to warrantless entries.  The Detectives' motion for summary judgment will be denied, and Plaintiff's cross motion will be granted.  Furthermore, the District's motion for summary judgment will be granted, and Plaintiff's partial cross motion will be denied.

## I.  FACTS

On May 9, 2012, D.C. Police Detectives John Paprcka and Jim Bovino served on Ms. Ford a grand jury subpoena relating to an investigation into criminal activity by Ms. Ford's boyfriend.  When the police arrived at her apartment, they found the door two inches ajar and they heard a baby crying.  Detectives' Mot. for Summ. J. (MSJ) [Dkt. 47], Ex. 1 (Paprcka Dep). at 9; *id.*, Ex. 2 (Bovino Dep.) at 9-11.  The detectives knocked at the door and identified

themselves several times.  When no one answered they pushed the door open and stepped in.

Just after the Detectives entered, Ms. Ford came out of the bedroom holding the baby and she

yelled at the Detectives, telling them to leave.  Paprcka Dep. at 10.  They served her with the

subpoena and left.  The parties do not dispute that the Detectives entered Ms. Ford's apartment

without a warrant and without consent.

The Detectives contend that their entry into the apartment was reasonable due to

exigent circumstances.  Detective Paprcka asserts that he entered the apartment because he

believed that the child was neglected or there was a medical emergency:

> The circumstances that were laid out in front of me gave me reason
> to believe that it was either a neglect case or there was a medical
> emergency, since the fact that—I knew Shantelle Ford's great love
> for the child based on prior dealings with her.  It was uncommon for
> her to be separated from the child.  And when the door is open and
> there's no response from an adult, that was a set of facts and
> circumstances that rose to the point where I was concerned for
> something happening inside the apartment which caused for
> additional investigation to confirm everything was okay.

Paprcka Dep. at 15-16.  Detective Bovino echoed this reason for entering the apartment.  He

stated:

> We felt that there was something—something wrong, there was
> something wrong in the apartment, because of what Detective
> Paprcka said to me about this young lady not leaving—she wouldn't
> leave the baby, and we became concerned that there was something
> going on or something wrong inside.  . . . There could have been a
> medical emergency of some sort.  There could have been criminal
> activity.  I just didn't know.

Bovino Dep. at 15-16.[1]  Detective Paprcka described the baby's crying as not "gut-wrenching,"

and he thought that the baby sounded hungry or tired: "It wasn't a gut-wrenching hey, I just fell

---

[1] The Detectives do not contend that they had received reports of any problems in the apartment
building or that they had he seen anything out of the ordinary in the building or the hallway.
Paprcka Dep. at 17, 22.

down and I hurt myself and I'm really freaked out crying.  It was a hey, I'm hungry or I need

some sleep type of deal crying."  Paprcka Dep. at 18.

Ms. Ford contests the Detectives' assertion that they had reason to believe that

there was either neglect or a medical emergency.  In fact, she contends that her baby was not

crying when the Detectives entered her apartment.  This dispute of fact is immaterial because, as

explained below, even if the Court accepts the Detectives' version of the facts as true, those facts

do not reflect exigent circumstances excusing the warrantless entry into Ms. Ford's home.

Ms. Ford filed an Amended Complaint, Dkt. 32, alleging claims against

Detectives Paprcka and Bovino as follows: Count I, a Fourth Amendment violation pursuant to

42 U.S.C. § 1983; Count II, invasion of privacy; Count III, intentional infliction of emotional

distress; and Count IV, trespass.  Her Amended Complaint also asserts a § 1983 Fourth

Amendment claim against the District of Columbia, alleging that the District was deliberately

indifferent to the need to train, investigate, and discipline police officers regarding warrantless

entries.  Plaintiff later withdrew her claim for intentional infliction of emotional distress.  *See* Pl.

Reply Re Detectives [Dkt. 62] at 1.

All Defendants filed motions for summary judgment, and Ms. Ford filed

oppositions and almost identical cross motions.  District MSJ [Dkt. 46]; Detectives' MSJ [Dkt.

47]; Pl. Cross MSJ Re Detectives [Dkt. 49]; Pl. Opp'n to Detectives' MSJ 51]; Pl. Cross MSJ Re

District [Dkt. 48]; Pl. Opp'n to District MSJ [Dkt. 50].  The matter was fully briefed when all

parties filed reply briefs.  *See* District Reply/Opp'n to Cross Mot. [Dkt. 58]; Detectives

Reply/Opp'n to Cross Mot. [Dkt. 59]; Pl. Reply Re Detectives [Dkt. 60] (corrected version at

Dkt. 62); Pl. Reply Re District [Dkt. 61] (corrected version at Dkt. 64); Pl. Corrected Appendix

[Dkt. 63].  Detectives Paprcka and Bovino assert qualified immunity based on exigent

circumstances, *i.e.*, that an objective officer would have reasonably believed he needed to enter Ms. Ford's apartment to protect life or avoid serious injury and thus that they did not violate the Fourth Amendment when they entered Ms. Ford's apartment.  The District argues that it is entitled to summary judgment as well because Ms. Ford has not pointed to evidence showing that a District custom or policy was the moving force behind the violation of her Fourth Amendment rights and she has not presented evidence of deliberate indifference to the need to train, supervise, and discipline officers with regard to warrantless entries based on exigent circumstances.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

4

When evaluating cross-motions for summary judgment, each motion is reviewed "separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." *Family Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (citation and internal quotation marks omitted).  Neither party is deemed to "concede the factual assertions of the opposing motion." *Competitive Enter. Inst. Wash. Bureau, Inc. v. Dep't of Justice*, 469 F.3d 126, 129 (D.C. Cir. 2006) (citation omitted)).

### III. ANALYSIS

#### A. Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known." *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To resolve a qualified immunity claim, a court must examine: (1) whether defendant violated a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001)).  These two prongs involve questions of law, *see Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985), and may be addressed in the order the court deems to be practical.  *Pearson*, 555 U.S. at 236.  At the summary judgment stage, a government official is not entitled to qualified immunity when there is a genuine issue of material fact in dispute.  *See Holcomb v. WMATA*, 526 F. Supp. 2d 20, 22 (D.D.C. 2007).  Whether qualified immunity applies turns on the objective reasonableness of the officer's action.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  *See Scott v. United States,* 436 U.S. 128, 138

(1978) (an action is reasonable under the Fourth Amendment regardless of an individual officer's state of mind, "as long as the circumstances, viewed objectively, justify that action").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search of a home is presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). Despite the presumption of unreasonableness of warrantless searches, "the exigencies of the situation can make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978). One exigency obviating the need for a warrant is the need to assist individuals who are seriously injured or threatened with serious injury. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Law enforcement officers may enter a home without a warrant "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham,* at 403.

To determine whether a warrantless entry was justified by exigent circumstances, courts apply an objective test and ask whether a reasonable officer would have believed there was a need for immediate action to protect life or property. *Wayne v. United States*, 318 F.2d 205, 216 (D.C. Cir. 1963). "When policemen, firemen or other public officers are confronted with evidence which would lead a prudent and reasonable official to see a need to act to protect life or property, they are authorized to act on that information, even if ultimately found erroneous." *Id*. To qualify as a safety-based exigent circumstance, an officer must reasonably believe that someone is in need of "immediate aid." *Mincey*, 437 U.S. at 392. That is, safety-based exigent circumstances necessitate "true immediacy" or confrontation of "real danger that serious consequences would certainly occur to the police or others." *United States v. Williams*,

354 F.3d 497, 504 (6th Cir. 2003).  The mere possibility of danger does not meet the definition

of an exigency that justifies a warrantless entry.  *See Tenenbaum v. Williams*, 193 F.3d 581, 594

(2d Cir. 1990).

        "A myriad of circumstances" could constitute reasonable grounds to believe an

injured or seriously ill person needs immediate assistance inside a home, such as "smoke coming

out a window or under a door, the sound of gunfire in the house, [or] threats from the inside to

shoot through the door at police"  *Wayne*, 318 F.2d at 216.  Courts also have found that there

were exigent circumstances demonstrating a need for immediate aid when police saw a blood

trail leading to a home.  *United States v. Chipps*, 410 F.3d 438, 443 (8th Cir. 2005); *see also e.g*.,

*Michigan v. Fisher*, 588 U.S. 45, 48 (2009) (finding exigent circumstances where (1) officers

were dispatched to the scene for a disturbance complaint; (2) upon arrival, they observed a

person "going crazy"; (3) officers saw blood on a pickup truck and on clothes inside of it; (4)

officers saw someone inside the house screaming and throwing things; and (5) officers saw an

individual with a cut, bloodied hand).

        Further, courts have upheld warrantless entry to assist unattended young children

whom they knew were in danger.  In *United States v. Bradley*, 321 F.3d 1212, 1215 (9th Cir.

2003), for example, the Ninth Circuit held that exigent circumstances existed where a child's

mother and boyfriend were arrested on drug charges and officers knew that the child was left

unattended.  In contrast, in *United States v. Gillespie*, 332 F. Supp. 2d 923, 925-926, 928 (W.D.

Va. 2004), the court found no exigent circumstances where officers went to an apartment to

deliver a warrant, heard someone inside, knocked and received no response, saw the back door

open with fresh footprints in the snow, and heard a baby crying.  Despite the fact that the officers

had reason to believe that someone had just left the apartment and that the baby might be left

alone, the court found that there were no exigent circumstances. "Although the officers may have believed that there were children in the apartment and [may have] been genuinely concerned about them, their belief that this situation rose to the level of an *emergency which required immediate entry* is not objectively reasonable." *Id*. at 928 (emphasis in original). The court concluded: "Certainly an objective officer might be concerned and could investigate the matter further, perhaps by contacting the mother, but [he] would probably not conclude that a warrantless entry was necessary." *Id*.

In this case, the Detectives' asserted belief that there was a crying child in Ms. Ford's apartment who needed immediate emergency aid is belied the Detectives' own deposition testimony. The Detectives went to Ms. Ford's apartment to serve a subpoena; they were not responding to a report of dangerous or criminal activity. The Detectives had not received reports of any problems in the apartment building and they did not see anything out of the ordinary in the building or the hallway. Paprcka Dep. at 17, 22. They did not testify that they heard gun shots or that they saw smoke, fire, or blood trails. They assert only that they heard a baby crying, no one responded to their knocks, and they knew Ms. Ford was an attentive mother. Paprcka Dep. at 15-16; Bovino Dep. at 15-16. While they contend that they believed that there was neglect or a medical emergency and the child needed immediate assistance, the facts cited (that they heard the baby crying and they knew Ms. Ford was an attentive mother) would not cause an objectively reasonable officer to believe that there was an emergency that required immediate entry, particularly since Detective Paprcka characterized the crying as a signal that the child was hungry or tired and that the crying was not "gut-wrenching." Paprcka Dep. at 18. A reasonable police officer would not interpret the sound of such crying as an indication of serious injury or danger requiring an immediate police response. Like the officers in *Gillespie*, the

Detectives could have investigated further, perhaps by telephoning the mother.  It is well-established that exigent circumstances justify a warrantless entry only when there is need for "immediate aid," *see Mincey*, 437 U.S. at 392, not when there is a mere possibility of danger, *see Tenenbaum*, 193 F.3d at 594.  Crediting the Detectives' deposition testimony that they knocked an announced their presence, they heard a baby crying, they knew Ms. Ford to be an attentive mother, and they felt something was wrong, these facts are insufficient to demonstrate exigent circumstances that would have justified the Detectives' warrantless entry into Ms. Ford's home. That is, no jury could find that a reasonable officer would believe that a baby's hungry, tired crying rose to the level of an emergency requiring immediate entry.

Because it is undisputed that the Detectives entered Ms. Ford's apartment without a warrant and without consent and because the exigent circumstances exception does not apply as a matter of well-established law, qualified immunity is not warranted.  Based on the same theory that exigent circumstances excused their entry into Ms. Ford's apartment, the Detectives also seek summary judgment on Ms. Ford's tort claims:  invasion of privacy and trespass.[2]  *See* Detectives MSJ [Dkt. 47] at 11-12.  Because the Court finds that no jury could find that an objectively reasonable police officer would have believed that exigent circumstances existed, the Detectives' motion for summary judgment will be denied.

Ms. Ford's cross motion for summary judgment against the Detectives seeks a finding of liability on her Fourth Amendment, privacy, and trespass claims.  Because the only

---

[2] Under D.C. law, invasion of privacy has three elements: (1) an invasion or interference by physical intrusion by use of a defendant's sense of sight or hearing (2) into a place where the plaintiff had secluded herself or into her private concerns (3) that would be highly offensive to an ordinary, reasonable person.  *Benz v. Washington Newspaper Pub. Co.*, Civ. No. 05-1760 EGS, 2006 WL 2844896 (D.D.C. Sept. 29, 2006).  Trespass is an unauthorized entry onto another person's property.  *Wright v. United States*, 964 F. Supp. 7 (D.D.C. 1997).

defense the Detectives raised was exigent circumstances and the Court has found that defense without merit as a matter of law, Ms. Ford's motion for summary judgment regarding liability will be granted.

### B.  Municipal Liability

To sustain a claim against a municipality under § 1983, a plaintiff must show that that the constitutional violation at issue was caused by a city custom, practice, policy.  *See Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 690 (1978).  The failure to train or supervise a city employee can amount to an unconstitutional policy when the failure amounts to deliberate indifference to the constitutional rights of persons with whom the employee comes in contact.  *City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989).  To recover on a failure to train or supervise claim, a plaintiff must establish "that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that the policymakers can be said to have been deliberately indifferent to the need," *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998), and that the failure was the proximate cause of the alleged constitutional violation, *Haynesworth v. Miller*, 820 F.2d 1245, 1261 (D.C. Cir. 1987); *Reed v. Dist. of Columbia*, 474 F. Supp. 2d 163, 170 (D.D.C. 2007).  A municipality is deliberately indifferent when it knew, or should have known, of the risk of a constitutional violation but did not act.  *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011).  *See Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (if a city insufficiently addresses constitutional violations and thereby increases the risk of repeated violations, it may be liable for deliberate indifference).  A city may be liable under § 1983 when similar constitutional violations were frequent, by a large number of officers, in a relatively short span of time.  *See Ashcroft v. Iqbal*, 556 U.S. 1937, 1949 (2009); *Kivanc v. Ramsey*, 407 F. Supp.

2d 270, 280 (D.D.C. 2006); *Fernandors v. Dist. of Columbia*, 382 F. Supp. 2d 63, 76 (D.D.C. 2005).

Ms. Ford contends that District of Columbia is liable for the Detectives' warrantless entry into her home because it failed to train, supervise, and discipline officers adequately with regard to warrantless entries and it knew, or should have known, of the risk of unjustified warrantless entries but did not act. Ms. Ford contends that the need for better training and supervision was obvious and the inadequacy was so likely to result in Fourth Amendment violations that the District was deliberately indifferent to the need. *See Rogala*, 161 F.3d at 56.

Ms. Ford relies on a D.C. Police Complaints Board Report dated June 12, 2013, which indicated that there were at least 12 valid complaints from 2007 to 2013 regarding warrantless entries. *See* District MSJ [Dkt. 46], Ex. 6 (PCB Report) at 4-5. The Report stated that the Board did not find a "systematic" problem, but that even a single citizen complaint can spur a report and recommendation for change. *Id*. at 2 n.4. While the Board found that General Order 702.03 regarding searches and seizures offered too little guidance regarding exceptions to the warrant requirement, it noted that Special Order 86.01 provided specific information on the type exigency raised as a defense here—where there is a need for emergency aid. *Id*. at 5. The Board recommended that the Metropolitan Police Department (MPD) develop a more thorough general order regarding all types of exigent circumstances; that the MPD should provide better training regarding warrant exceptions; and that MPD should appropriately discipline officers who fail to follow the rules. *Id*. at 11-12.

The Board's report is insufficient to show that the District of Columbia had notice of a warrantless entry "problem" at the time the Detectives entered Ms. Ford's apartment on May

9, 2011, because the report was issued on June 12, 2013, over two years later.[3]  Even if the District had notice of the matters cited in the Report, the Report does not indicate a widespread or systemic problem with respect to the warrantless entries into private homes, as it notes 12 valid complaints over the course of approximately six years.

Further, it cannot be said that the District failed to inform and direct its officers regarding the personal safety exception to the warrant requirement.  Special Order 86.01 specifically directs police regarding this type of exigency.  *See* PCB Report at 5.  Also, one of the officer training handbooks explicitly instructs that exigent circumstances justify a warrantless search: "(1) when officers reasonably believe that someone is in need of assistance; (2) to protect or to preserve life; and (3) to avoid serious injury."  District Reply/Opp'n to Cross Mot. [Dkt. 58], Ex. 3 (Laws of Arrest, Search and Seizure Handbook (Jan. 1989 ed.)).  There is no evidence that the District failed to discipline officers who violated MPD rules regarding warrantless entries.  It is undisputed that Detectives Paprcka and Bovino were reprimanded concerning the incident that is the subject of this suit.  *See* District Reply/Opp'n to Cross Mot. [Dkt. 58] at 12 (citing Pl. Statement of Material Facts at 33).  In addition, the PCB Report concerning complaints against officers describes letters of dereliction to officers in some situations and explains that discipline was pending in others.  PCB Report at 2-5.

The District argues that it is entitled to summary judgment as well because Ms. Ford has not pointed to evidence showing that a District custom or policy was the moving force behind the violation of her Fourth Amendment rights and she has not presented evidence of

---

[3] The District also argues that the PCB Report is inadmissible hearsay.  However, since Ms. Ford proffers the PCB Report to show notice to the District, not the truth of the matters asserted in the report, the report is not hearsay.  *See* Fed. R. Evid. 801(c) (hearsay is a statement offered to prove the truth asserted in the statement).

deliberate indifference to the need to train, supervise, and discipline officers with regard to warrantless entries based on exigent circumstances.

In sum, Ms. Ford has failed to demonstrate a genuine issue of material fact with regard to her § 1983 claim against the District of Columbia.  The District's motion for summary judgment will be granted, and Ms. Ford's cross motion will be denied.  Summary judgment will be entered in favor of the District on Count V.

## IV. CONCLUSION

For the foregoing reasons, the Detectives' motion for summary judgment [Dkt. 47] will be denied, and Plaintiff's cross motion for partial summary judgment against the Officers [Dkt. 49] will be granted.  Judgment as to liability will be entered against Detectives Paprcka and Bovino on Counts I (Fourth Amendment), II (Invasion of Privacy), and IV (Trespass).  The District of Columbia's motion for summary judgment [Dkt. 46] will be granted, and Plaintiffs' cross motion for partial summary judgment [Dkt. 48] against the District will be denied.  Judgment will be entered in favor of the District on Count V.  A memorializing Order accompanies this Opinion.  A status conference will be scheduled by the Deputy Clerk.

Date: August 16, 2016                                    _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge